NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3492
_____

UNITED STATES OF AMERICA

v.

CHARLES A. COSTANZO
                              Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Crim. Action No. 08-CR-009-01)
District Judge:  Honorable Edwin M. Kosik
_____

Submitted Under Third Circuit LAR 34.1(a)
June 23, 2011
_____

Before:  CHAGARES, JORDAN, and GREENAWAY, JR., Circuit Judges

(Opinion Filed:  August 15, 2011)
_____

OPINION
_____

GREENAWAY, JR., Circuit Judge

After his conviction by a jury for fraud and other offenses, appellant Charles A. Costanzo ("Costanzo") appeals the District Court's August 18, 2009 Judgment of Sentence imposing a period of incarceration of seventy months and ordering him to pay $504,439.28 in restitution. Costanzo argues that: (1) the sentence is based on substantively flawed advisory sentencing Guidelines calculations related to the total loss amount and the District Court's adoption of the 2-level enhancement for an abuse of a position of trust; and (2) the District Court improperly denied his request for a downward departure because the advisory Guidelines calculation overrepresented the seriousness of his criminal history.

For the following reasons, we will affirm the District Court's judgment of sentence.

## I. BACKGROUND

We write primarily for the benefit of the parties and shall recount only the essential facts.

In March 2004, Costanzo was contracted by Lackawanna County (the "County") as an independent contractor/third party administrator for the Worker's Compensation Fund (the "Fund") for the County.[1] As part of his responsibilities, Costanzo was required to pay the worker's compensation claims from the Fund. After he was awarded the contract, Costanzo and co-conspirator, Marc Boriosi ("Boriosi"), sought to defraud the County by embezzling money from the Fund. To facilitate their scheme, Costanzo and

---

[1] Lackawanna County self insures its worker's compensation program which qualifies as a health care benefit program and an insurance program.

2

Boriosi created Executive Claims Administration, Inc. ("ECA").[2] Boriosi owned 50% of the business. He was responsible for purchasing computers, software, and office equipment; installing the computers and software; using computers to issue checks to medical providers; and investigating suspicious claims submitted by employees.

Costanzo and Boriosi misappropriated the County's funds in various ways. The investigation revealed that when the County transferred funds to ECA for legitimate worker's compensation claims, Costanzo embezzled the funds by funneling some of the money to Endless Mountain Investigative, LLC ("EMI"), which Boriosi formed in September 2004. Costanzo used EMI to investigate the validity of some worker's compensation claims.[3] In addition, Costanzo issued several checks on the County's behalf to fund personal expenditures having nothing to do with his duties to the County. Costanzo funded a personal stock account through Morgan Stanley, a Cadillac Escalade, concert tickets, and everyday purchases, from these improperly issued checks.

On May 23, 2006, the County and ECA entered into a 5-year contract for the administration of the worker's compensation program. That contract was set to expire on June 30, 2011. ECA's responsibilities, as noted above, remained the same under the new contract.

---

[2] Costanzo was identified as the President of ECA, a company designed to serve as the administering agent for the Fund. ECA was to receive claims from medical providers, process the claims, file necessary state forms, provide monthly expense reports, issue payments to medical providers, initiate subrogation and/or supersedeas bonds when warranted, report qualified claims to the excess insurance carrier, recover excess policy payments, and complete annual self-insured renewal applications. Costanzo was paid $85,000 annually.

[3] EMI operated from the offices of ECA.

The County maintained a checking account at First National Community Bank. When ECA was required to make disbursements, Boriosi would fax a request to the County budget director who would then wire funds into the legitimate account for ECA at Old Forge (Pennsylvania) Bank, entitled "Executive Claims Administration, Inc. – Lackawanna County". Costanzo also had an account at Old Forge Bank, entitled "Executive Claims Administration, Inc."

The County reportedly transferred $3,530,000 to the Executive Claims Administration Inc. – Lackawanna County account between November 2004 and September 2007. Costanzo misappropriated $310,000 of that sum by transferring funds from the County's account to the other account in the name of Executive Claims Administration, Inc. Although ECA was entitled to receive one-half of funds recovered from excess insurance coverage, Costanzo transferred the total amount of excess insurance reimbursements into his ECA account at Old Forge Bank between 2005 and 2007. In addition, Costanzo filed fraudulent tax returns and failed to report the income he received through ECA. The scheme put into play by Costanzo and Boriosi is accountable for a loss of $647,260 to the County. Costanzo is personally responsible for misappropriating $337,260.[4]

On November 19, 2008, a twenty-count First Superseding Indictment was returned by a federal grand jury against Costanzo. Those counts included: (1) conspiracy to

---

[4] The amount of loss used by the District Court in its calculation was $647,260, but this amount was reduced by the amount recovered from forfeiture proceedings for the purposes of calculating the amount of restitution. The final restitution was determined to be $504,439.28.

commit wire fraud, healthcare fraud, insurance fraud and to defraud the IRS, in violation of 18 U.S.C. § 371; (2) wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346; (3) money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); (4) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); (5) through (12) engaging in monetary transactions in property derived from specific unlawful activity, in violation of 18 U.S.C. § 1957; (14) healthcare fraud, in violation of 18 U.S.C. § 669; (15) insurance fraud, in violation of 18 U.S.C. § 1033; (16) and (17) filing a false return, in violation of 26 U.S.C. § 7206; (18) and (19) tax evasion, in violation of 26 U.S.C. § 7201; and (20) forfeiture, in violation of 18 U.S.C. §§ 981 and 982.

On April 22, 2009, a jury found Costanzo guilty of all of the charges in the Indictment. On August 14, 2009, Costanzo was sentenced to 70 months of imprisonment, a special assessment of $200, and payment of restitution in the amount of $504,439.28. On August 18, 2009, the District Court vacated the August 14, 2009 judgment, and entered an identical judgment.

After almost a year of addressing procedural issues regarding timeliness and dispositive motions, on February 1, 2011, Costanzo filed a timely appeal.

## II.    JURISDICTION AND STANDARD OF REVIEW

The District Court had subject matter jurisdiction, pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

We review the district court's factual findings relating to loss used in calculating a sentence and a defendant's role in the offense for clear error. United States v. Brennan, 326 F.3d 176, 194 (3d Cir. 2003). We review de novo the District Court's determination

5

that the defendant occupied a position of trust, as defined by the statute, and we review

for clear error the District Court's determination that Costanzo abused a position of trust.

United States v. Iannone, 184 F.3d 214, 222 (3d Cir. 1999).

Finally, a district court's sentencing procedure is reviewed for abuse of discretion.

Gall v. United States, 552 U.S. 38, 51-52 (2007). Appellate review is limited to

determining whether the imposed sentence is procedurally sound and substantively

reasonable. Id. See also United States v. Levinson, 543 F.3d 190, 195 (3d Cir. 2008)

("Our responsibility on appellate review of a criminal sentence is limited yet important:

we are to ensure that a substantively reasonable sentence has been imposed in a

procedurally fair way.")

### III.    ANALYSIS

#### Loss Calculation

Costanzo argues that the District Court incorrectly calculated the total loss

attributable to his offense, resulting in a higher total offense level. He contends that the

loss calculation contained in the Presentence Investigation Report ("PSR") was grossly

overstated because it ignored contractual sums due to him as a result of his contract with

Lackawanna County, and that the actual amount of the loss should be $93,189.95, instead

of $647,260.00. Further, if the total loss was correctly determined to be $93,189.95, the

total offense level under § 2B1.1 would have been 15, instead of 21. Last, he asserts that

a total offense level of 15 would have resulted in an advisory sentencing Guidelines range

of 33 to 41 months instead of 70 to 87 months, as calculated in the PSR. We disagree.

Several facts established at trial undermine Costanzo's argument. Costanzo was

6

not entitled to take money from the Fund. Costanzo was required to substantiate the amount of requested monies from the County, and if his request met the terms of the contract, the County would be obligated to cut a check to him from the general fund, not the Fund. The money Costanzo misappropriated came out of the Fund, without the County's knowledge and agreement, and was used for his personal expenses. Further, there were separate procedures in place for Costanzo's reimbursement, but he failed to follow those procedures.

Based on the jury's verdict and the PSR, the District Court determined that the total loss attributable to Costanzo is $647,260.00, which includes money misappropriated by him ($337,260) and money Boriosi received through EMI ($310,000). Although Costanzo argues that the loss calculation should be substantially reduced, he fails to support this proposition. The advisory sentencing Guidelines define only two occasions where a defendant is entitled to receive credit to reduce the amount of loss. See Commentary E(i) and E(ii) to U.S.S.G. § 2B1.1. First, "the money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected," and second, "in a case involving collateral pledged or otherwise provided by the defendant, the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing." Id.

Neither of these circumstances applies to Costanzo.[5]  There is no basis to find the District Court's rejection of Costanzo's argument regarding loss calculation clearly erroneous.

**Abuse of a Position of Trust**

Costanzo next argues that the District Court erred in adopting the 2-level enhancement for an abuse of a position of trust.  U.S.S.G § 3B1.3 provides for an increase of two levels if a defendant abused a position of trust in a manner that significantly facilitated the commission or concealment of the offense.  The Court must first determine whether the defendant occupied a position of public or private trust, and then determine whether this trust was abused in significant furtherance of the crime.  Iannone, 184 F.3d at 222.

Costanzo argues that he was not in a "position of trust", as defined by § 3B1.3, because he was subject to intense scrutiny in the form of audits by various public officials within the Lackawanna Courthouse, as well as an independent audit commissioned by the County.  We disagree.

---

[5]  Perhaps Costanzo is arguing that the work he did under his contract with Lackawanna County should be construed as "services rendered [] by the defendant … to the victim before the offense was detected", but we cannot be sure that is his point, since he neither cites nor discusses the pertinent portions of the commentary to the Sentencing Guidelines. Nor does he cite any case in which losses due to embezzlement have been offset by the value of what the defendant claims he should have legitimately received under a contract with the victim.  Assuming that argument has some legitimacy, however, we still cannot say, on this record, that Costanzo effectively established the bases for his argument, and thus we reject the contention that the District Court's loss calculation is clearly erroneous.

8

This Court has applied certain criteria to determine whether a position constitutes a position of trust, including: "(1) whether the position allows the defendant to commit a difficult- to- detect' wrong; (2) the degree of authority which the position vests in defendant vis-à-vis the object of the wrongful act; and (3) whether there has been reliance on the integrity of the person occupying the position." United States v. Pardo, 25 F.3d 1187, 1192 (3d Cir. 1994). In Pardo, this Court determined that "the rationale for increased punishment is that an insider who takes advantage of a position of trust to facilitate a crime is thought to be more culpable than one who simply commits the offense." Id. at 1191.

All three factors enunciated in Pardo are met here. First, Costanzo's role as an administrator of the Fund placed him in control of all of the monies flowing into the Fund. Costanzo's arrangement with the County and the existence of a second account at Old Forge Bank, which was exclusively controlled by Costanzo, allowed him unfettered access to the Fund without detection. Further, it is uncontested that the County relied on Costanzo's integrity in administering the Fund. Costanzo abused that position of trust to accomplish his misappropriation, using his position to divert money from the Fund to himself for personal gain. The most significant support for this proposition is his ability to access and spend County money without immediate ramifications. The scrutiny and supervision that Costanzo claims is omnipresent is not supported by the record. He occupied a position of trust, as defined under § 3B1.3. Nothing before us contradicts this finding by the District Court. There is no basis for this Court to find that the District Court's determination on abuse of a position of trust was clearly erroneous. The 2-level

9

enhancement under the advisory sentencing Guidelines is appropriate.

**Criminal History Category**

Costanzo argues that the District Court erred in adopting the criminal history category reported in the PSR and that the criminal history category used overrepresented the seriousness of his criminal history. According to Costanzo, the Probation Office determined that he had four criminal convictions prior to his sentencing in this case. The four convictions are (1) a 1994 summary citation for harassment; (2) a 1997 conviction for resisting arrest and simple assault; (3) a 1999 conviction for recklessly endangering another person and criminal mischief; and (4) a 2004 summary offense for disorderly conduct. Costanzo argues that as a result of this determination, the Probation Office determined that he had five criminal history points, and a criminal history category of III.

Costanzo is mistaken. The Probation Office only used two of the four criminal convictions in its calculation of his criminal history points – his 1997 conviction for resisting arrest and simple assault, which resulted in a sentence of three to six months imprisonment (two criminal history points), and his 1999 conviction for recklessly endangering another person and criminal mischief, which resulted in 4 to 23 months of imprisonment (three criminal history points).[6] The U.S.S.G. Table provides that four to six criminal history points establish a criminal history category of III.

The Probation Office did not assign any criminal history points to Costanzo's

---

[6] According to the applicable Guidelines, 3 points are added for each prior sentence of imprisonment exceeding one year and one month, and 2 points are added for each prior sentence of imprisonment of at least sixty days not counted in (a). U.S.S.G. § 4A1.1(a) and (b).

1994 or 2004 crimes because they did not know whether Costanzo was represented by counsel or waived his right to legal representation. The background to the Commentary of U.S.S.G. § 4A1.2 indicates that unconcealed misdemeanor sentences, where imprisonment is not imposed, are not to be considered in computing the criminal history score. We find no error in the Probation Office's calculation of Costanzo's criminal history category and the criminal history calculated by the District Court's adoption of that calculation.

**Request for a Downward Departure**

Costanzo contends that a downward departure is warranted because the District Court "significantly over-represented the seriousness of his past conduct and future threat to society." (Appellant's Br. 19.) The standard for downward departures, under the advisory sentencing Guidelines, is as follows:

> If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.

U.S.S.G. § 4A1.3(b)(1).

During the sentencing hearing, Costanzo specifically stated that a downward departure was warranted for three reasons: (1) the intervening period of time following his last conviction; (2) the nature of the offenses; and (3) the provocation that preceded those offenses.

The two crimes considered by the District Court in denying Costanzo's request for a downward departure occurred in 1997 and 1999. The first conviction is more than

11

10 years prior to the instant case, but the second conviction is 9 years prior to the instant case. In the 1997 conviction, Costanzo was involved in a verbal altercation with his girlfriend. Afterwards, the girlfriend was picked up by her sister. Costanzo pulled up next to the sister's vehicle, exited, grabbed the sister by the throat, slammed her to the ground and kicked her. He grabbed his girlfriend by the hair, punched her, and threw her to the ground. The sister suffered abrasions and contusions to her right elbow, neck, and hips. The girlfriend suffered contusions and swelling to her head. A sheriff's deputy tried to subdue Costanzo and was thrown to the ground. He suffered a laceration to his right hand.

In the 1999 conviction, Costanzo was involved in a domestic dispute. As officers arrived, Costanzo fled, driving into oncoming traffic. A high speed car chase ensued. In both of these crimes, provocation does not appear to be an issue. Instead, it seems that Costanzo's temper was the impetus for his crimes.

Application Note 3 to §4A1.3 states that:

> A downward departure from the defendant's criminal history category may be warranted if, for example, the defendant has two minor misdemeanor convictions close to ten years prior to the instant case and no other evidence of prior criminal behavior in the intervening period.

U.S.S.G. § 4A1.3, Comment 3.

Unfortunately for Costanzo, there is evidence of prior criminal behavior in the intervening period. Costanzo has a number of pending charges against him, including a 2009 charge for harassment and disorderly conduct, a 2008 two-count indictment charging him with making and subscribing a false individual tax return (he has pled

12

guilty and is awaiting sentencing); a simple assault and harassment in 2006; and other instances of domestic violence, physical abuse, and anger management issues.

The District Court correctly calculated Costanzo's Guidelines sentence, taking into account the total loss amount and a 2-level enhancement for abuse of a position of trust. The District Court concluded that "[Costanzo's] objections are overruled based on the very reasons . . . adopted by the probation officer and as pointed out by the government in their argument," (App. Vol. II, A-000062) and stated on the record that it was not going to grant Costanzo's request for a downward departure.

Based on information contained in the PSR related to evidence of prior criminal behavior and the District Court's rationale stated on the record, we find no error in the decision to deny Costanzo's request for a downward departure. The District Court was well within its discretion to conclude that the facts before it did not support granting a downward departure.

## IV. CONCLUSION

For the foregoing reasons, we will affirm the judgment of sentence.

13